IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES R. ROGERS,

        Plaintiff,

v.                                Civil Action No. 1:04CV164

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

## **MEMORANDUM, OPINION and REPORT AND RECOMMENDATION**
## **SOCIAL SECURITY**

### **I. Introduction**

A.    <u>Background</u>

Plaintiff, Charles R. Rogers, (Claimant), filed his Complaint on July 28, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on November 10, 2004.[2] Claimant filed his Motion for Summary Judgment and Brief in Support Thereof on January 16, 2005.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on March 7, 2005.[4] Claimant filed a Reply Brief on March 21, 2005.[5]

B.    <u>The Pleadings</u>

        1.    <u>Claimant's Motion for Summary Judgment.</u>

---

[1] Docket No. 1.

[2] Docket No. 3.

[3] Docket No. 8.

[4] Docket No. 11.

[5] Docket No. 12.

  2.  Commissioner's Motion for Summary Judgment.

  3.  Claimant's Reply Brief.

C. Recommendation

  1. I recommend that Claimant's Motion for Summary Judgment be GRANTED because the ALJ erred when he determined that Claimant could perform his past relevant work.

  2. I recommend that Commissioner's Motion for Summary Judgement be DENIED for the same reasons set forth above.

## II. Facts

A. Procedural History

On October 17, 2001, Claimant filed for Disability Insurance Benefits (DIB). The claim was ultimately denied by the Appeals Council on February 3, 2003.

On April 3, 2003, Claimant filed his second request for DIB alleging disability since October 12, 2002. The application was denied initially and on reconsideration. A hearing was held on March 4, 2004 before an ALJ. The ALJ's decision dated March 29, 2004 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on July 14, 2004. This action was filed and proceeded as set forth above.

B. Personal History

Claimant was 62 years old on the date of the March 4, 2004 hearing before the ALJ. Claimant has a high school education and past relevant work experience as a self-employed machine shop worker and as a millwright.

C. Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability October 12, 2002 - March 29, 2004:

**VA Medical Records, Progress Notes Printed 4/29/03, Tr. 143**

| | |
|---|---|
| 11/22/02 | Alcohol screening test (CAGE) was positive (score = 2). Patient is not interested in any educational material/counseling at this visit. No barriers to learning identified. Seeking SSI Disability due to his urinary frequency. |
| 12/14/01 | Contusion of right thumb. |
| 10/18/01 | Voices his desire to "obtain disability". Denied urinary frequency at home. Patient does not meet any criteria for surgical intervention with PCP. |
| 10/13/00 | Celluitis in a patient who has diabetes mellitus. |
| 10/16/00 | Bullous skin disease which is resolving on P.O. Steroids. |

7/14/99
ASSESSMENT AND PLAN:
- We will consider Elavil for prostatism and the patient's reported nervousness which might be aggravating his frequency. The patient has no obstructive symptoms and was instructed that this drug may or may not help him, but he is willing to try it.

**Radiology Reports, 12/20/01**
- Examination of the right 1st finger (thumb) shows DJD of the 1st interphalangeal joint and hypertrophic spurring of the base of the right 1st proximal phalanx. There is no fracture or dislocation. Marked soft tissue swelling of the right 1st finger. Abnormality. Attention needed.

**12/14/01**
- Marked soft tissue swelling.
- Probable hairline fracture proximal portion distal phalanx.
- Reviewed with Harold Scott.
- Minor abnormality.

**12/19/00**
IMPRESSION: Slight enlargement of the right kidney. Otherwise, no significant abnormality, left and right kidneys. Minor abnormality.
**4/12/00**
Comparing with the previous examination of 4/5/00, again noted is the faint calcification of the aortic knob. The cardiac size is top normal. There is no active pulmonary disease. Very

minimal degenerative disc disease change of the lower thoracic spines.  Minor abnormality.

**4/6/00**
- High grade stenosis at the origin of the left ICA with an ulcerated plaque.
- Two small tandum plaques at and proximal to the origin of the right ICA which did not demonstrate greater than 30% stenosis.
- Note originating from the aortic arch.
- Abnormality, attention needed.

**4/7/00**
- The heart appears slightly to moderately enlarged.  There is faint calcification of the aortic knob.  The lungs are clear.  There may be slight hyperinflation of the lung fields.  Very mild degenerative disc disease change of the mid thoracic spines.
- Minor Abnormality.

**3/14/00**
IMPRESSION:  Normal to minimal atherosclerotic disease of the right internal cartoid artery.  Severe disease of the left internal cartoid artery.  Abnormality, attention needed.

**3/14/00**
- CT of the head performed with and without IV contrast administration:  There is suggestion of mild frontal atrophy.  Otherwise, no significant abnormality is seen in the brain parenchyma or ventricular system.  There is no evidence of mass lesions or hemorrhage.  The bone window shows mucosal thickening in the ethmoidal sinuses and posterior sphenoid sinus suggestive of chronic sinusitis.  Clinical correlation is suggested.  Abnormality, attention needed.

**12/31/98**
- There is presence of a large inferior calcaneal spur and a smaller posterior calcaneal spur.  Otherwise, no significant abnormalities are seen.  Minor abnormality.

**5/18/99**
- Pulmonary function.  Normal spirogram.

**5/27/99**
- ETT Report.  Negative stress test.

**3/14/00**
- Echo Report.  Normal study.

**3/14/00**
Holter Report Interpretation:  Sinus rhythm (25 hours.0 minutes).
No VT.  No SVT.  Positive extremely frequent VE.  Extremely rare SVE.  No significant pauses.  No diary provided.

Conclusion: Abnormal.

**Joseph C. Kassis, M.D., United Hospital Center, 3/28/03, Tr. 232**
- Postoperative Diagnosis: Early intestinal cystitis.

**Chest x-ray, 3/24/03, Tr. 233**
- Normal chest.

**Physical Residual Functional Capacity Assessment**
**Cynthia Osborne, 5/21/03, Tr. 237-244**
PRIMARY DIAGNOSIS: Early intestinal cystitis.
SECONDARY DIAGNOSIS: Artereosclerosis L ICA.
EXERTIONAL LIMITATIONS: Occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS: None established.
MANIPULATIVE LIMITATIONS: None established.
VISUAL LIMITATIONS: None established.
COMMUNICATIVE LIMITATIONS: None established.
Environmental Limitations: All unlimited except avoid concentrated exposure to extreme cold.

**Physical Residual Functional Capacity Assessment**
**Fulvio Franyutti, M.D., 8/13/03, Tr. 247-254**
PRIMARY DIAGNOSIS: Interstitial cystitis, early.
SECONDARY DIAGNOSIS: Illegible.
EXERTIONAL LIMITATIONS: Occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push or pull.
POSTURAL LIMITATIONS: None established.
MANIPULATIVE LIMITATIONS: None established.
VISUAL LIMITATIONS: None established.
COMMUNICATIVE LIMITATIONS: None established.
Environmental Limitations: All unlimited except avoid concentrated exposure to extreme cold.

**V.A. RECORDS, 5/27/03, James A. Arnett, M.D., Tr. 257**
S: F/U 11/22 hyperlipidemia. Feels "real good". No CP/SOB.
Visited Dr. Kassis (private GU), who apparently has DX early interstitial cystitis via cystocopy. Still seeking SSI disability for GU problem. Was RX 3 different meds. [illegible] names, by Dr. Kassis. Forgot to bring info. Apparently started to develop desquamation on hands then feet, then loosening of fingernails:
Apparently had similar problem from med given here in past (appears to be [illegible] from record). No TOB. States has reduced beer to only occasional.

**12/9/03, James A. Arnett, M.D., Tr. 265**
CLINICAL REMINDER ACTIVITY
Alcohol Screen Audit C (+) < 8:

Alcohol counseling given at this visit.
Comment: Patient very receptive.
A/P: 61 year old male with Hyperlipidemia, Controlled.
- Patient states that he is doing very well on Simvastatin with no side-effects.
- Interstitial Cystitis. We will schedule a Urology Consult.

**12/30/03, Radhakrishna Murthy, M.D., Tr. 260**
ASSESSMENT: Irritable bladder syndrome.
PLAN:
- The patient was given a prescription for Ditropan 5 mg q.d. for 3 months.
- Also, a urinalysis was ordered.
- The patient was advised to return in 3 months for a follow-up.

D. Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 293, 297-99):

Q All right. Now, at the present time, you say you're going to the bathroom about -

A 25 to 30 times a day.

Q And when you talk about a day, are you talking about - -

A 24 hours.

\* \* \*

Q That's a number of minutes?

A Number of minutes it took to use the bathroom.

Q Okay. And some of those are as much at 15.

A Yeah, 15 minutes. And I have went 17 and 18 minutes, because I timed myself before but I never did write it down, but I have went 17 or 18 minutes.

Q Now I know this is probably very uncomfortable for you, and probably every man in this room is hoping they never have to sit here and explain - -

6

A Yeah, I - -

Q - - how often they have to go to the bathroom.

A Yeah, I hope they don't either.

Q When you're in there 15 minutes, are you just standing there waiting?

A I'm sitting down. I can't - - I was going to tell you that out here a while ago, but I can't hardly use the bathroom standing up. I have to sit down anymore to use the bathroom.

Q Okay. Is it pain, or?

A Just - - I don't know. I just - - when I sit like this, it seems to flow better.

Q Okay.

A It comes out better.

Q Now do you have accidents during - -

A No, I've never had any accidents. I've never had - - but a lot of people have that, I hear.

Q Okay. But you don't?

A I don't have that.

Q When you have to go to the bathroom, have you ever had occasions where it wasn't available to you, you were on the road or something?

A Yeah, I've been on the road, yeah. Yeah.

Q What's that do to you?

A It makes pains across my stomach right here.

Q How long can you hold out till that pain becomes unbearable?

A Oh, probably 30 minutes.

Q      Okay. Do you ever have back pain?

A      Yes. I've had some back pain, yes.

Q      When does that occur?

A      Well, just about any time.

Q      Okay.

A      And mostly before I go to the bathroom.

### 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 312-14):

Q      Okay. I want you to assume that the Claimant would have the ability to do medium work. Would he be able to do any of his past relevant work?

A      He could do machinist work, Your Honor, at the medium level. And there's some millwright work that is medium, but most of it is in the heavy range, Your Honor.

Q      All right. I want you to assume that the - - that the Claimant was limited to medium work, but because of his need to - - for frequent urination, he'd have to be able to go to the bathroom about once every half your, and he'd - - through the course of the workday. Would he be able to do any of his past work?

A      He could do his past work, Your Honor, if he was self-employed, because he could accommodate his routine. If he was working for another employer, say as he did when he went off and did jobs for the millwright union, they expect productivity, Your Honor, and twice a - - just, say, five or ten minutes each and not say 15 - - five or ten minutes each every hour, at least 20 minutes an hour, and that would not fly with most employers. They would not put up

with that.

ALJ		All right.  Counsel, you have questions?

ATTY		Just a couple, Your Honor.

ALJ		All right.  Now with regard to his self-employment and what you've heard, he would need to provide a certain amount of capital for some of these businesses - - well, all of them: used car lot, machine shop.

ALJ		Well I don't - - don't think that's really a proper question.

ATTY		I agree, Your Honor, but I also think at step five, you can't make someone start a business to do past relevant work.

ALJ		Well then I think that's a legal - - I mean, that's a legal argument.  I mean, I - - I'm not - -

ATTY:		But I think it's important that on the record we have the vocational expert indicate that certain capital expenditures are required to do this job walking in on day one.  He's testified to that.  He should know, because he knows what jobs require.

ALJ		Well, then - - I think that - - I think that's really you know - - a legal statement.

ATTY		Well - -

ALJ		- - because I don't really think what we're dealing with - - I mean, it - - you know, then you're - - you know, you're really talking about something else than the guy being able to physically do the - - physically and/or mentally do the requirements of the job.  I mean, I think that's really what we're talking about.  So - -

ATTY		Well, let me ask you this.  How many jobs are there for a self-employed

9

machine shop operator or used car lot owner?

> VE        How many jobs for self-employed?
>
> ATTY     One per person?
>
> VE        Sure.
>
> ATTY     But no more than that?
>
> VE        No.

E.    <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

- Helps clean the house. (Tr. 283).
- Shovels snow. (Tr. 283).
- Plants garden, does yard work. (Tr. 283).
- Used to drink beer. (Tr. 302).

## II. The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred when he concluded that Claimant could return to his work as a self-employed machine shop worker.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly determined that Claimant could perform his past relevant work.

10

B.  The Standards.

1.  Summary Judgment.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.  Judicial Review.  Only a final determination of the Commissioner may receive judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.  Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.  Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.  Disability Prior to Expiration of Insured Status- Burden.  In order to receive disability

insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6. Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past

work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10. Social Security - Step Four - Past Relevant Work. At Step Four of the sequential process, the ALJ must decide whether a claimant's impairments prevent him from returning to his past relevant work. The phrase "past relevant work" is defined as "skills and abilities that [one] has acquired through work [one] has done which shows the type of work [one] may be expected to do." 20 C.F.R. § 404.1565(a). In addition, the work usually must have been performed within the past fifteen (15) years to be considered past relevant work. If a claimant is capable of returning to his past relevant work, he is not deemed to be disabled.

11. Social Security - Past Relevant Work - Entrepreneur. "[T]he law does not impose on Social Security claimant the requirement of becoming an entrepreneur so as to establish a business which requires the use of her capital as well as her labors." Cornett v. Califano, 590 F.2d 91, 94 (4th Cir. 1978).

C. Discussion

### 1. Past Work

Claimant asserts that the ALJ erred when he concluded that Claimant could return to his work as a self-employed machine shop worker. Commissioner counters that the ALJ properly determined that Claimant could perform his past relevant work.

At Step Four of the sequential process, the ALJ must decide whether a claimant's impairments

13

prevent him from returning to his past relevant work. The phrase "past relevant work" is defined as "skills and abilities that [one] has acquired through work [one] has done which shows the type of work [one] may be expected to do." 20 C.F.R. § 404.1565(a). In addition, the work usually must have been performed within the past fifteen (15) years to be considered past relevant work. If a claimant is capable of returning to his past relevant work, he is not deemed to be disabled.

The ALJ determined that Claimant retains the residual functional capacity (RFC) to "perform a full range of medium work activity but would need to use the restroom once every half hour." (Tr. 25). Also, the ALJ determined that Claimant's RFC does not preclude him from performing his past relevant work as a self-employed machine shop worker. (Tr. 26).

Claimant argues that his past relevant employment is no longer available and that the law does not impose a burden on him to start up his own company in order to be employed. Cornett v. Califano, 590 F.2d 91, 94 (4th Cir. 1978). Cornett, states that "the law does not impose on Social Security claimant the requirement of becoming an entrepreneur so as to establish a business which requires the use of her capital as well as her labors." As Commissioner points out Cornett deals with the fifth step of the sequential evaluation process regarding the existence of jobs in the national economy. Regardless, the principle should also apply to the fourth step of the sequential evaluation process as well. If a claimant cannot be required to be an entrepreneur at the fifth step, a claimant should not be required to be an entrepreneur at step four. Social Security law does not impose a burden on Claimant to start up his own company in order to be employed. Claimant was 62 years old at the time of the hearing, the law does not expect him to start up a machine shop at the cost of $75,000-$100,000. Therefore, the ALJ erred in determining that Claimant could perform his past relevant work. Being an entrepreneur requires risk of one's assets. The law should not require that.

Risking assets should be voluntary - especially for someone 62 years of age.

**IV. Recommendation**

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be GRANTED because the ALJ erred when he determined that Claimant could perform his past relevant work.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: April 28, 2005

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE